IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD G. MARTINEZ,

    Plaintiff,

     v.                                                                                          1:15-cv-00817-LF

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

**MEMORANDUM ORDER AND OPINION**

THIS MATTER comes before the Court on plaintiff Richard G. Martinez's Motion to Reverse and Remand (Doc. 18), which was fully briefed May 23, 2016. The parties consented to my entering final judgment in this case. Doc. 9. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of Adam Metcalf, Licensed Clinical Social Worker ("LCSW"), and Dr. Elizabeth Chiang, a state agency psychiatrist. The Court therefore GRANTS Mr. Martinez's motion and remands this case to the Commissioner for proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Mr. Martinez, 48, holds a Bachelor's Degree in Adult Education and a cosmetology certificate. AR 48, 58, 284. Mr. Martinez filed applications for disability insurance benefits and supplemental security income on February 14, 2014—alleging disability since July 13, 2012 due to AIDS, Kaposi's sarcoma, depression and anxiety. AR 284–89, 290–96, 354, 371. The Social Security Administration ("SSA") denied his claims initially on May 29, 2014. AR 168–72. The SSA denied his claims on reconsideration on September 5, 2014. AR 174–81, Doc. 15-7 at 1. Mr. Martinez requested a hearing before an ALJ. AR 182. On June 24, 2015, ALJ Eric Weiss held a hearing. AR 37–70. ALJ Weiss issued his unfavorable decision on July 17, 2015. AR 14–36.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

At step one, the ALJ found that Mr. Martinez had not engaged in substantial, gainful activity since July 13, 2012.  AR 19.  Because Mr. Martinez had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two.  AR 20.  At step two, the ALJ found that Mr. Martinez suffered from the following severe impairments:  HIV/AIDS, Kaposi's sarcoma, depressive disorder, neuropathy of the feet, pneumonia, anxiety disorder, and amphetamine type substance abuse.  *Id.*  At step three, the ALJ found that none of Mr. Martinez's impairments, alone or in combination, met or medically equaled a Listing.  AR 21–23.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Martinez's RFC.  AR 23–29.  The ALJ found that:

> [C]laimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently.  The claimant can stand and/or walk for four hours out of an eight-hour workday with regular breaks.  The claimant can sit for six hours out of an eight-hour workday with regular breaks.  The claimant can push and/or pull twenty pounds occasionally and ten pounds frequently.  He must avoid more than occasional exposure to irritants such as fumes, odors, dust and gases.  He is able to understand, remember and carry out simple instructions and make commensurate work related decisions.  He is able to adjust to routine changes in the work setting.  He is able to maintain concentration, persistence and pace for two hours at a time during the eight-hour workday with regular breaks.

AR 23–24.

At step four, the ALJ concluded that Mr. Martinez was unable to perform any of his past relevant work as a teacher's aide, telephone representative, pharmacy technician, collection clerk, or room service clerk.  AR 29.  The ALJ found Mr. Martinez was not disabled at step five, concluding that he still could perform jobs that exist in significant numbers in the national economy—such as work as an assembler, finish inspector, and electronics assembler.  AR 30–31.

Mr. Martinez requested review by the Appeals Council, which denied the request. AR 1–5. Mr. Martinez timely filed his appeal to this Court on September 16, 2015. Doc. 1.

## IV. Mr. Martinez's Claims

Mr. Martinez raises several arguments for reversing and remanding this case: (1) the ALJ erred in finding that he could stand and/or walk for four hours a day; (2) the ALJ failed to properly weigh the opinion of treating physician Dr. de Vente; (3) the ALJ's RFC finding that he could perform a limited range of light work is not supported by substantial evidence; (4) the ALJ failed to support his mental RFC findings with substantial evidence; (5) the ALJ erred in giving only "some weight" to the opinion of consulting psychologist Mary Loescher, Ph.D.; (5) the ALJ failed to address several moderate limitations found by LCSW Adam Metcalf; (6) the ALJ failed to address several moderate limitations found by non-examining agency psychiatrist Dr. Chiang; and (7) the ALJ erred in relying on vocational expert testimony that conflicted with the Dictionary of Occupational Titles and that did not take into account all of Mr. Martinez's limitations. Because the Court remands based on the ALJ's failure to adequately address the limitations noted in the opinions of LCSW Adam Metcalf and Dr. Elizabeth Chiang, the Court does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

### A. The ALJ failed to either incorporate, or explain why he rejected, limitations noted in the medical reports of LCSW Metcalf and Dr. Chiang.

Mr. Martinez argues that the ALJ committed legal error by failing to incorporate several moderate mental limitations assessed by LCSW Adam Metcalf and by Dr. Elizabeth Chiang, while at the same time giving their opinions "great weight." Doc. 18 at 17–21. The Commissioner argues that the ALJ did not err because he was not required to account for all of

5

the moderate limitations found by LCSWMetcalf, and because his reliance on Dr. Chiang's findings at the conclusion of her report excused him from addressing the numerous moderate limitations noted in the first part of her report. Doc. 22 at 10–13. For the reasons discussed below, the Court agrees that the ALJ erred by failing to address several of the noted moderate mental limitations.

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide

"appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

### 1. **LCSW Metcalf**

Mr. Martinez argues that because the ALJ affords LCSW Metcalf's opinion "great weight, he was required to assess the impact of the many other moderate limitations found by [LCSW] Metcalf." Doc. 18 at 17. The Commissioner argues that the ALJ does not have to address the limitations in Mr. Metcalf's "other source" opinion on a "line-by-line basis," and posits that the ALJ gave the opinion great weight because it stated that Mr. Martinez "could return to work and that his prognosis was good if he continued treatment." Doc. 22 at 10.

In his December 23, 2014 opinion, LCSW Metcalf opined that Mr. Martinez had the following limitations:

- Moderate limitation in the ability to remember locations and work-like procedures;
- Moderate limitation in the ability to understand and remember very short and simple instructions;
- Moderate limitation in the ability to understand and remember detailed instructions;

- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

AR 880–83.

The ALJ's assessment of LCSW Metcalf's Mental Residual Functional Capacity Assessment (MRFCA) is as follows:

> Adam Metcalf, LISW [sic], the claimant's current therapist believes that the claimant would be able to work as his condition is stable. He has treated the claimant for four months; however, the claimant has "been sporadic" in keeping appointments. Mr. Metcalf has found the claimant would have moderate limitations with detailed or complex tasks, but would not be limited with short, simple instructions. His ability to execute those tasks would be moderately limited. In the area of social functioning, he would have no limitations to moderate limitations, and would not be limited in the area of adaptation. Mr. Metcalf further believes that the claimant's prognosis is good if he continues with weekly therapy (Exhibit l7F; dated December 23, 2014). I find this assessment consistent with the evidence of record and assign it great weight.

AR 28.

LCSW Metcalf is considered an "other source" under the regulations. *See* SSR 06-03p (Aug. 9, 2006), 2006 WL 2329939, at *5. Opinions from "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Opinions from "other sources" are weighed using the same factors for weighing opinions from acceptable medical sources. *Id.* at *4–*5;

*Frantz*, 509 F.3d at 1302.[3]  The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

The parties disagree about how much the ALJ was required to discuss LCSW Metcalf's "other source" opinion.  The Commissioner argues that the ALJ is not required to address LCSW Metcalf's limitations "line-by-line," arguing that for a "nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." Doc. 22 at 10 (quoting *Keyes-Zachary*, 695 F.3d at 1164).  The Commissioner also cites *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished), claiming that it stands for the proposition that an "ALJ is not required to discuss a counselor's opinions with the same level of detail as a physician's." Doc. 22 at 10.  The Court finds these cases distinguishable.  Unlike the ALJ in this case, the ALJs in *Keyes-Zachary* and in *Mounts* did not pick and choose from limitations noted in the "other source" opinions.  In each case, the ALJ rejected the "other source" opinion outright, and the Court found no error because the ALJ's decision allowed the Court to "follow the adjudicator's reasoning." *Mounts*, 479 F. App'x at 866 (quoting SSR 06-03p, 2006 WL 2329939, at *6); *see also Keyes-Zachary*, 695 F.3d at 1164 (same).

---

[3] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted).

Here, however, the ALJ erred because his discussion of the evidence does not permit the Court to follow his reasoning. In this case, as in *Frantz*, the ALJ "ignored evidence from [an "other source"] that would support a finding of disability while highlighting evidence favorable to a finding of nondisability." *Frantz*, 509 F.3d at 1302. And, as in *Haga*, "the ALJ did not state that any evidence conflicted with [the] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the] restrictions but not others." 482 F.3d at 1208. Under *Haga* and *Frantz*, the ALJ was required to either adopt all of the moderate limitations assessed by LCSW Metcalf, or explain his reasons for not doing so. The ALJ gave LCSW Metcalf's opinion "great weight." AR 28. However, the RFC does not encompass all of the moderate limitations noted in LCSW Metcalf's opinion, and provides no rationale for rejecting the omitted limitations. Therefore, remand is required.

The parties do not address each omitted limitation individually. The Court will not do so either, as remand is required given that the ALJ omitted at least two critical limitations from the RFC without adequate discussion.[4]

First, the ALJ failed to include any limitation concerning Mr. Martinez's ability to accept instructions and respond appropriately to criticism from supervisors in the RFC. LCSW Metcalf found that Mr. Martinez had a moderate limitation in this ability. AR 883. Dr. Chiang found

---

[4] Mr. Martinez also argues that the ALJ erred in stating that LCSW Metcalf found that he "would not be limited with short, simple instructions." Doc. 18 at 16. LCSW Metcalf found that Mr. Martinez was moderately limited in his ability to "*understand and remember* very short and simple instructions," but that he was "not significantly limited" in his ability to "*carry out* very short and simple instructions." AR 880–81 (emphases added). The ALJ's discussion of LCSW Metcalf's opinion appears to muddle these limitations, stating that "Mr. Metcalf has found the claimant would have moderate limitations with detailed or complex tasks, but would not be limited with short, simple instructions. His ability to execute those tasks would be moderately limited." AR 28. While unclear what the ALJ intended to say, it is clear that he did not acknowledge the fact that LCSW Metcalf found that Mr. Martinez had a moderate limitation in his ability to understand and remember short and simple instructions.

10

that Mr. Martinez had a moderate limitation in this ability. AR 110, 129. Dr. Loescher, the agency's consultative examiner, found that Mr. Martinez "would be severely impaired in his ability to . . . interact with others in a work setting." AR 699.[5] The ALJ failed to adequately discuss all of the evidence regarding Mr. Martinez's ability to interact with supervisors. While the ALJ did cite Dr. Chiang's Section III MRFCA finding that Mr. Martinez could "interact adequately with coworkers and supervisors," AR 29, the ALJ failed to reconcile this statement with the other evidence of record indicating at least a moderate limitation in this area. *See* further discussion of Dr. Chiang's opinion *infra*. A claimant's ability to interact with supervisors is a work-related mental ability which is critical to all work, and the ALJ must adequately address it in the RFC.[6] The ALJ's failure to address this basic work function in the RFC requires remand.

---

[5] The ALJ gave Dr. Loescher's opinion "some weight," but found no credible support for "such severe limitations." AR 28. The ALJ did not discuss what he meant by "some weight," and did not discuss whether or not he found any limitation in Mr. Martinez's ability to get along with supervisors or others in a work setting.

[6] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal

Second, the ALJ failed to adequately address the limitation in Mr. Martinez's ability to complete a normal workday and workweek without psychologically based interruptions, and to perform at a consistent pace without an unreasonable number and length of rest periods. LCSW Metcalf found that Mr. Martinez had a moderate limitation in this ability. AR 882. Dr. Chiang found that Mr. Martinez had a moderate limitation in this ability. AR 109, 128. The ALJ did not point to any evidence contradicting the fact that Mr. Martinez has at least a moderate impairment in this area. However, the ALJ failed to explain why he rejected this limitation. The mental abilities needed for any job include "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Social Security Program Operations Manual System ("POMS") § DI 25020.010, http://policy.ssa.gov/poms.nsf/lnx/0425020010. "These requirements are usually strict." *Id.* Because this ability is a general requirement for all jobs, the ALJ must address this limitation in formulating Mr. Martinez's RFC. *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (unpublished) (noting that a moderate limitation in another ability required for all jobs—the ability to respond appropriately to changes in a routine work setting—could decrease ability to perform simple or unskilled work because it is a general work requirement). The ALJ failed to adequately address this limitation. Remand is therefore appropriate.

---

with changes in a routine work setting.") In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

### 2. Dr. Chiang

The ALJ assigned "great weight" to the medical source opinion of Dr. Elizabeth Chiang, a non-examining state agency psychiatrist. AR 29. In Section I of her May 27, 2014 MRFCA, Dr. Chiang found that Mr. Martinez had the following limitations:

- Moderate limitation in the ability to understand and remember detailed instructions;
- Moderate limitation in the ability to carry out very short and simple instructions;
- Marked limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to ask simple questions or request assistance;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in the ability to respond appropriately to changes in the work setting
- Moderate limitation in the ability to set realistic goals or make plans independently of others.

AR 109–10, 128–29.

In Section III of her MRFCA, Dr. Chiang found that:

Claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a work setting.

AR 110, 129.

The ALJ assessed Dr. Chiang's opinion as follows:

This determination is consistent with the opinions of state agency medical consultants who have also found the claimant is not disabled. . . . With respect to his mental functioning, Elizabeth Chiang, M.D., concluded the claimant retains the capacity for unskilled work. More specifically, he can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with coworkers and supervisors, and

13

>respond appropriately to change in a routine work setting (Exhibit 3A, page 15; dated May 27, 2014). . . . I note that the residual functional capacity given by the state agency is consistent with the residual functional capacity I have assessed herein. I give great weight to the opinions of the state agency medical consultants.

AR 29.

Mr. Martinez argues that the ALJ failed to account for the numerous moderate limitations in Dr. Chiang's MRFCA. Doc. 18 at 19. The Commissioner responds that "[t]he ALJ accounted for the psychologists' [sic] opinions by relying on their specific opinions, at the conclusion of their reports . . . ." Doc. 22 at 12. The Commissioner cites *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (unpublished), claiming that it supports the proposition that it is not error for the ALJ to "not mention[] the moderate limitations in performance indicated in Section I of the Mental Residual Functional Capacity form where the ALJ relied on the state agency's ultimate opinion in Section III." *Id.* The Commissioner also cites several out-of-circuit cases as support for this position. *Id.* at 12-13. The Court finds the Commissioner's arguments unpersuasive.

As the Honorable Stephan M. Vidmar thoroughly explained in his recent opinion rejecting nearly identical arguments, the POMS, regulations, and case law require the ALJ to address all of Dr. Chiang's findings, not just those in Section III. *See Silva v. Colvin*, No. 15-cv-603 SMV, Doc. 24 at 11–18 (D.N.M., Aug. 25, 2016). Specifically, "findings of fact made by State agency . . . psychological consultants and other program physicians and psychologists become opinions at the administrative law judge . . . level[] of administrative review . . . and requires administrative law judges . . . to consider and evaluate these opinions when making a decision in a particular case." POMS § DI 24515.013, http://policy.ssa.gov/poms.nsf/lnx/0424515013. Further, "[b]ecause State agency medical and psychological consultants and other program physicians and psychologists are experts in the

Social Security disability programs, the rules in 20 CFR [§§] 404.1527(f) and 416.927(f) require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges . . . are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.*  And although ALJs also "must consider and evaluate" a program physician's or psychologist's Section III RFC, Section I findings are not exempt from this scrutiny.  *See id.*

Social Security regulations also require ALJs to "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . ." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  "Evidence" includes "findings . . . made by State agency medical and psychological consultants and other program physicians and psychologists . . ., and opinions expressed by medical experts or psychological experts that we consult based on their review of the evidence in your case record." 20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii).  Like the POMS, the regulations do not exempt the Section I findings from an ALJ's consideration and evaluation.  *See id.*

Case law also requires ALJs to consider the entire MRFCA, not just the Section III findings.  The Court has surveyed the cases from the Tenth Circuit that expressly address the distinction between Section I and Section III findings.  Two cases, *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013) (unpublished), arguably could be interpreted in the Commissioner's favor, but the others could not.  *Compare*

15

*Smith*, 821 F.3d at 1269 n.2[7] ("Ms. Smith questions how the [ALJ]'s [RFC] assessment incorporates the moderate limitations indicated by Dr. Frommelt. . . . This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations."), *and Sullivan*, 519 F. App'x at 989 (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the Section I findings), *with Nelson v. Colvin*, No. 15-6226, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished) (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)), *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III"), *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished) ("Where a psychologist's Section III narrative does not

---

[7] In *Smith*, the court held that the ALJ did not err in failing to repeat moderate nonexertional limitations from a medical opinion because the limitations were incorporated into the RFC. 821 F.3d at 1269. To the extent that *Smith* suggests that an ALJ may ignore a consulting psychologists Section I findings, that suggestion is inconsistent with the Tenth Circuit's earlier decisions in *Haga*, 482 F.3d at 1208 ("ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others"), and *Frantz*, 509 F.3d at 1302–03 ("ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion"). However, one panel of the court cannot overrule another, *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005), and earlier panel decisions control over later ones, *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 n.2 (10th Cir. 2014).

16

contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC.  The ALJ did so here . . . .  And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted), *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings), *and Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).  While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat:  the Section III findings must adequately account for the Section I findings.  The case law therefore requires ALJs to consider all of the findings made in medical source opinions, including the Section I findings.

Thus, under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why she adopted some of Dr. Chiang's limitations while rejecting others.  The Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Chiang in the RFC assessment.  *See Carver*, 600 F. App'x at 619 ("if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have

on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding"). If not, the Court must determine whether the ALJ adequately explained why he rejected the missing limitations.

The Commissioner argues that, even if the ALJ failed to include some limitations, this omission is harmless error because "[t]he ALJ's ultimate findings accounted for the doctors' opinions." Doc. 22 at 13 n.1. The Court disagrees. In this case, Dr. Chiang's Section III summary failed to sufficiently account for the moderate limitations assessed in Section I. For example, Dr. Chiang's Section III findings fail to describe the effect of the Section I finding that Mr. Martinez had a "moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 109–10, 128–29. Because Dr. Chiang's Section III summary does not encapsulate this moderate limitation, the ALJ was required to discuss this limitation in his RFC findings. As the ALJ did not do so, remand is appropriate. In addition, Dr. Chiang's Section I and Section III findings about Mr. Martinez's ability to get along with supervisors conflict. In Section I, Dr. Chiang found that Mr. Martinez had a "moderate limitation" in his ability "to accept instructions and respond appropriately to criticism from supervisors." AR 110, 129. However, in Section III, without any narrative explanation, Dr. Chiang found that Mr. Martinez could "interact adequately with co-workers and supervisors." *Id.* Because Dr. Chiang's Section III narrative does not incorporate her Section I finding of a moderate limitation, and because the ALJ failed to explain why he rejected this limitation, remand is required. *See Carver*, 600 F. App'x at 619.

As discussed above, the ALJ failed to sufficiently account for Mr. Martinez's limitations in his ability to get along with supervisors, and in his ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. Under *Haga* and *Frantz*, the ALJ must either adopt these moderate limitations, or explain why he rejected them.

## VI.   Conclusion

The ALJ erred in failing to incorporate several moderate limitations assessed by LCSW Metcalf and Dr. Chiang into Mr. Martinez's RFC without explanation. The Court remands so that the ALJ can explain the evidentiary basis for his RFC determination and his reasons for rejecting portions of the uncontroverted evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 18) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent